FILED
at____O'clock &____min.____M

MAY 2 4 2005

BRENDA K. ARGOE, CLERK
United States Bankruptcy Court
Columbia, South Carolina (30)

ORIGINAL FILED
at____O'clock &____min.____M

MAY 2 4 2005

BRENDA K. ARGOE, CLERK
United States Bankruptcy Court
Columbia, South Carolina (30)

**IN THE UNITED STATES BANKRUPTCY COURT**

**FOR THE DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| IN RE:<br><br>Billie Carol Antley Harter,<br><br>Debtor.<br><br>William Henry Harter, III,<br><br>Plaintiff,<br><br>v.<br><br>Billie Carol Antley Harter,<br><br>Defendant. | C/A No. 04-10700-W<br><br>Adv. Pro. No. 04-80386-W<br><br>**ORDER**<br><br>Chapter 7 |

This matter comes before the Court upon a complaint filed by William Henry Harter, III ("Plaintiff"). In the complaint, Plaintiff seeks to have certain obligations owed by Billie Carol Antley Harter ("Debtor") deemed nondischargeable pursuant to 11 U.S.C. § 523(a)(15). Based upon the evidence presented by the parties and their legal arguments, the Court makes the following Findings of Fact and Conclusions of Law pursuant to Federal Rule of Civil Procedure 52, which is applicable to bankruptcy proceedings under Federal Rule of Bankruptcy Procedure 7052.[1]

## FINDINGS OF FACT

1. Plaintiff and Debtor were married on June 8, 1985. During the marriage, the parties had one child.

2. On August 26, 1999, Plaintiff and Debtor executed a note for $124,973 and a mortgage (collectively, the note and mortgage shall be referred to as the "Mortgage"). The

---

[1] To the extent any of the following Findings of Fact constitute Conclusions of Law, they are adopted as such, and to the extent any Conclusions of Law constitute Findings of Fact, they are so adopted.

home of Plaintiff's parents, a $30,000.00 certificate of deposit held by Plaintiff's parents, and real property located at 103 Cape Place Drive, Greenwood, South Carolina (the "Marital Residence") serve as collateral for the Mortgage. The Mortgage served as a second mortgage on the Marital Residence.

3. On May 4, 2003, the parties separated. Thereafter, Plaintiff instituted an action for divorce against Debtor. Upon the completion of divorce proceedings in the Family Court for the County of Greenwood, South Carolina ("State Court"), the State Court incorporated the terms of a settlement agreement between Plaintiff and Debtor into a Final Order of Divorce ("Divorce Decree") that finalized the parties' divorce upon its entry on November 21, 2003.

4. The State Court granted Debtor a divorce, *a vinculo matrimonii*, on the grounds of Plaintiff's habitual drunkenness.

5. The settlement agreement incorporated into the Divorce Decree required the parties to sell the Marital Residence and remain equally responsible for any remaining deficiency balance under the Mortgage.

6. The settlement agreement also provided for joint custody of the parties' minor child. However, under the terms of the settlement agreement, Debtor would have primary custody, and Plaintiff would make regular financial contributions for the benefit of the child.

7. Since January 2004, the parties' minor child has lived with Plaintiff.

8. On February 27, 2004, the parties sold the Marital Residence. The proceeds generated by the sale satisfied the first mortgage on the Marital Residence and reduced the Mortgage balance by $30,000.00. After the sale of the Marital Residence, the parties remained equally liable for the deficiency balance of the Mortgage.

9.  Debtor received $18,000.00 from the sale, and Plaintiff received $5,000.00.

10. Debtor used the $18,000.00 to make a $9,000.00 down payment on the purchase of a home located at 224 Loblolly Circle, Greenwood, South Carolina ("Loblolly Home"). Debtor's mortgage payment for the Loblolly Home includes taxes and insurance and is approximately $784.00 per month. Debtor currently pays $800.00 per month on the mortgage for the Loblolly Home.

11. Debtor does not currently reside at the Loblolly Home; instead, Debtor has been living at the residence of her boyfriend in Lincolnton, Georgia. Since December 2004, Debtor has rented the Loblolly Home to a tenant for $850.00 per month. The tenant's lease expires in June 2005, and Debtor expects to return and reside in her home thereafter. Furthermore, Debtor testified that she must return to her home because her employer, Self Memorial Hospital, now requires her to live within a thirty-minute commute to the hospital in order to timely respond to on-call requests.

12. In March 2004, the parties entered a Note Modification Agreement. The Note Modification Agreement reduced the parties' interest rate on the Mortgage from six percent (6%) to four-point-four-five percent (4.45%), required monthly payments of $685.40, and created a balloon payment of approximately $115,899.00 due on March 15, 2007.

13. According to the terms of the Divorce Decree and the Note Modification Agreement, Debtor's obligation for her half of the monthly payments on the Mortgage is $342.70 and her share of the balloon payment due on March 15, 2007 is approximately $57,949.00.

14. In 2004, Debtor earned approximately $59,090.52 in salary as a cardiac care nurse at Self Memorial Hospital. As of April 25, 2005, Debtor continues her employment at a reduced base salary from what she earned in 2004. Apparently, under new guidelines, the

hospital reduced Debtor's working hours from eighty hours per pay period to seventy-two hours per pay period. Debtor's seventy-two hour pay period is comprised of three twelve-hour shifts per week. In addition to her hourly wage earnings, Debtor earns pay for certain on-call duty each month whether or not she is called to work at the hospital. Her net monthly income as a nurse is approximately $2,705.00 per month.

15. Debtor testified that her only assets are her home, a retirement account, a checking account, a savings account, and her automobile.

16. Debtor testified that her Loblolly Home may be worth between $118,000.00 and $120,000.00, and that she would be able to sell her home for $118,000.00 on the open market after spending $3,200.00 in roof repairs. Debtor currently owes approximately $106,000.00 on a mortgage on her home; thus, it appears that Debtor holds approximately $9,000 in equity in her home.

17. Debtor's retirement account is currently valued at $4,200.00. She deducts $50.00 from her paycheck per month for retirement.

18. On average, Debtor's checking account holds a balance of $500, and her savings account holds a balance of $200.

19. The value of Debtor's automobile is currently less than the amount she owes for the loan used to finance the purchase of the automobile.

20. Other than the Mortgage payments at issue in this case, Debtor's only remaining debts following the discharge she received in her bankruptcy are her mortgage, a credit card balance of approximately $1,600.00, and payments on her automobile loan. She also owes certain amounts to her parents and her boyfriend.

21.  Although she suffers from the effects of Graves Disease, Debtor is otherwise in generally good health and the Graves Disease does not impede her employment duties.

22.  Plaintiff earns a base annual salary of $65,120.00 per year as a Vice President/Lending for Community Capital Corporation ("Capital Bank"). In addition to his base salary, Plaintiff has also received bonus pay based upon his performance and Capital Bank's performance during the business year. Capital Bank does not guarantee bonus pay as it is solely dependent upon the employee's performance and the overall performance of Capital Bank during a given fiscal year.

23.  Plaintiff receives $525.00 per month in rental income.

24.  Plaintiff testified that he did not receive bonus pay for eight or nine of the years that he worked for Capital Bank, but he did testify that he received incentive pay for those years. Furthermore, Plaintiff indicated that he received a three percent (3%) pay increase last year. Plaintiff also noted that he normally receives the three percent (3%) pay increase every year.

25.  Plaintiff has recently instituted a child custody suit in State Court. Plaintiff included a financial declaration that lists his current monthly income, expenses, and assets (the "2005 Financial Declaration") in the child custody pleadings he submitted to the State Court.

26.  Plaintiff's 2005 Financial Declaration indicates that he holds a 401(k) retirement account valued at $124,559.36, stocks valued at $19,100.00, and other assets valued at $25,000.00. During the trial of this matter, Plaintiff also testified that he owns a one-half interest in a boat. Plaintiff also owns two automobiles, one of which is used by the parties' minor child.

27.  Although Plaintiff's retirement account is valued at $124,559.36, Plaintiff has a $22,474.44 loan against his 401(k). Furthermore, Plaintiff has substantial credit card debt

5

plus a line of credit balance totaling approximately $31,000.00. Plaintiff is currently servicing these obligations and making full payments on the Mortgage obligation in a timely manner. Of his total monthly expenses of $4,307.26, Debtor's monthly payments on his credit card obligations, 401(k) loan, and line of credit balance is $1,414.88. Accordingly, his other monthly expenses for living expenses and the minor child total $2,892.38.

28.     Plaintiff owns a home and a rental property, but there is no evidence indicating whether he holds any equity in those parcels of real property.

## CONCLUSIONS OF LAW

The parties have stipulated that the underlying obligation at issue is the product of a divorce proceeding that is not of the kind addressed by § 523(a)(5). Therefore, the issue before the Court is whether the obligation at issue is nondischargeable pursuant to § 523(a)(15).[2]

The § 523(a)(15) litigation before the Court centers upon the following two issues:

1) whether a debtor lacks the ability to pay the obligation sought to be declared nondischargeable under § 523(a)(15)(A); or

2) whether the benefit of the discharge outweighs the detriment suffered by the party seeking nondischargeability of the obligation pursuant to § 523(a)(15)(B).

---

[2] 11 U.S.C. § 523(a)(15) provides as follows:

**(a)**     A discharge under section 727, 1141, 1228(a), 1228(b) or 1328(b) of this title does not discharge an individual debtor from any debt—

\* \* \* \*

**(15)** not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, a determination made in accordance with State or territorial law by a governmental unit unless--

**(A)** the debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor and, if the debtor is engaged in a business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business; or

**(B)** discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse, former spouse, or child of the debtor. . . .

See Oswald v. Asbill (In re Asbill), 236 B.R. 196-97 (Bankr. D.S.C. 1999) (noting that property settlement agreements are generally dischargeable in bankruptcy except under the provisions of §§ 523(a)(15)(A) & (B)).

Section 523(a)(15) litigation involves a shifting burden of proof. Baker v. Baker (In re Baker), 274 B.R. 176, 197 (Bankr. D.S.C. 2000). As an initial matter, the party seeking to have an obligation deemed nondischargeable pursuant to 11 U.S.C. § 523(a)(15) bears the burden to prove, by a preponderance of the evidence, that the obligation at issue arose from a divorce or separation proceeding and that the obligation is one other than the kind described in § 523(a)(5). In re Baker, 274 B.R. at 197. This requirement has been satisfied by a stipulation from the parties.

Thereafter, Debtor bears the burden of proof to demonstrate, by a preponderance of the evidence, that she lacks the ability to pay the obligation at issue or that the benefit of discharging the obligation outweighs the detriment the other party will suffer if the obligation at issue is discharged. Id. Since § 523(a)(15) is written in the disjunctive, Debtor is required to demonstrate only one of the two prongs of § 523(a)(15). Id. Normally, if Debtor can demonstrate that she does not have the ability to pay the underlying obligation under § 523(a)(15)(A), the Court's analysis ends and the underlying obligation at issue is deemed dischargeable; if the Court finds that Debtor has the ability to pay, then the Court must consider the requirements of § 523(a)(15)(B). See id. (quoting In re Leroy, 251 B.R. 490, 505 (Bankr. N.D. Ill. 2000)). However, under the unique facts of this case, the Court shall provide a discussion and analysis under § 523(a)(15)(A) and § 523(a)(15)(B).

I.      11 U.S.C. § 523(a)(15)(A)

Under § 523(a)(15)(A), the Court must determine whether a debtor lacks the ability to pay a debt sought to be declared nondischargeable pursuant to § 523(a)(15)(A). Normally, when considering § 523(a)(15)(A), the Court must apply an "ability to pay test" that equates to the "disposable income test" utilized by § 1325(b)(2). Campbell v. Campbell (In re Campbell), 198 B.R. 467, 473-74 (Bankr. D.S.C. 1996) (holding that disposable income test of § 1325 is the proper test for a § 523(a)(15)(A) determination). Under § 1325(b)(2), "disposable income" is "income which is received by the debtor and which is not reasonably necessary to be expended . . . for the maintenance or support of the debtor or a dependent of the debtor." See In re Campbell, 198 B.R. at 474 (quoting In re Solomon, 67 F.3d 1128, 1131 (4th Cir. 1995) to define the "disposable income test"). Therefore, under subsection § 523(a)(15)(A), a debtor must show that he does not have the ability to pay debts from income that is reasonably necessary for his support. Scott v. Scott (In re Scott), 194 B.R. 375, 381 (Bankr. D.S.C. 1995). Accordingly, the Court must review Debtor's income and expenses to determine whether she can afford to pay all reasonable and necessary living expenses for herself and her dependent in addition to paying her portion of the Mortgage.

Under the terms of the settlement agreement incorporated into the Divorce Decree, Debtor's current obligation on the Mortgage is approximately $342.70 per month with a balloon payment for approximately $57,949.00 due on March 15, 2007. Debtor submitted a budget indicating that she earns approximately $2,705.00 per month but pays $3,030.00 in monthly expenses. Plaintiff contends that Debtor's income is understated by $850.00 in rent

that she collects from leasing her home. However, the testimony[3] indicates that the tenant's lease will expire in June 2005, and that Debtor will resume residing in her home thereafter because of its proximity to her place of employment.[4] Furthermore, the Court notes Debtor used the rent formerly collected to pay for necessary improvements to the Loblolly home, such as a new heating unit. Therefore, the Court finds that the evidence indicates that the rent Debtor collects does not appear to be a consistent source of income for Debtor in the future. Thus, according to Debtor's figures, Debtor's budget results in a deficit of approximately $325.00 per month.

However, "application of the disposable income test does not require blind acceptance of a debtor's budget . . . ." Ferraro v. Ballard (In re Ballard), Nos. 00-71225-S, 00-07041-S, 2001 WL 1946239, at *17 (Bankr. E.D. Va. 2001). Upon review of Debtor's budget of expenses, the Court is inclined to reduce Debtor's $250.00 disbursement for personal loans from her parents and boyfriend. Since the personal loans came from her family and boyfriend, it appears that Debtor has the ability to repay those loans in lesser monthly payments or at a later time. Accordingly, the Court finds $100.00 per month to be a reasonable amount to service such obligations. The Court also notes that Debtor's $70.00 storage expense is a short-term expense that will not continue in the future because Debtor will be returning to her home sometime in June or July of this year; thus, it also should be excluded. Plaintiff contends that Debtor's $250.00 monthly payment to service her credit

---

[3] Plaintiff asserted that, as of the time of trial, Debtor lived with her boyfriend. Although Plaintiff alluded to the fact that Debtor receives maintenance and support from her boyfriend in the form of rent-free housing and shared living expenses, Plaintiff presented no evidence indicating that Debtor's boyfriend provided other support payments to Debtor. Furthermore, no evidence was presented concerning the boyfriend's income, nor any attempt to impute a portion of the boyfriend's income into Debtor's monthly budget, or demonstrate that Debtor's boyfriend would provide any support payments to Debtor after she returned to the Loblolly Home.

[4] Apparently, the hospital where Debtor works now requires her to be able to commute to the hospital within thirty (30) minutes or less.

card balance of approximately $1,600.00 is an overstated expense and that Debtor has the ability to service her credit card balance at a reduced amount. Despite this assertion, no minimum payment amount available to Debtor or lesser reasonable amount was established. Nevertheless, the Court finds that a payment of $100.00 per month is a reasonable amount of debt service for Debtor's $1,600.00 credit card balance. Thus, in light of the aforementioned reductions in expenses, Debtor's expenses should be reduced by $370.00.

Despite decreasing Debtor's monthly expenses by excluding items that may not be reasonable and necessary living expenses, Debtor's budget does not generate much disposable income.[5] Additionally, upon Debtor returning to the Loblolly Home, her living expenses will increase, including expense for utilities and home maintenance, expenses that Debtor does not currently pay while living with her boyfriend. Debtor's share of the monthly payments on the Mortgage is approximately $342.70 per month; however, in light of Debtor's current financial situation and the increase of her living expenses once she returns to the Loblolly Home, Debtor cannot generate sufficient disposable income to meet the $342.70 monthly obligation.

Moreover, there was no evidence convincing the Court that Debtor could raise sufficient funds to pay her $57,949.00 share of the balloon payment coming due on March 15, 2007.[6] Although Plaintiff is confident that he can obtain refinancing for the balloon payment coming due, Plaintiff, a mortgage lender by trade, testified that any refinancing of the balloon payment would be at a higher rate of interest. Because of the higher interest rate, Plaintiff concludes that future monthly payments on the Mortgage may increase to an

---

[5] The $370.00 reduction in expenses generates only $45.00 in disposable income.

[6] To realize the equity in her residence, Debtor will likely incur real estate commissions and closing expenses, leaving her with little equity.

amount between $900.00 and $1,000.00. In such event, Debtor's obligations on the Mortgage would be between $450.00 and $500.00, amounts that Debtor cannot meet under her budget. In light of the current state of Debtor's financial affairs, it appears that she cannot afford to pay her reasonable and necessary living expenses plus the Mortgage obligation under the settlement agreement. Accordingly, Debtor's obligation to pay half of the Mortgage payments under the terms of the Divorce Decree appears dischargeable under § 523(a)(15)(A).[7]

**II.    11 U.S.C. § 523(a)(15)(B)**

Under § 523(a)(15)(B), the Court must determine whether the benefit of discharging the marital obligation at issue outweighs the detriment suffered by the party seeking nondischargeability. "Rather than adopting a *per se* rule under which the party with the higher income or standard of living loses under § 523(a)(15)(B), the Court must weigh the needs of the parties and balance the equities under the specific facts of each case." In re Asbill, 236 B.R. at 198. Generally, any decision with respect to a § 523(a)(15)(B) analysis will examine the totality of the circumstances on a case-by-case basis.[8] Id.

---

[7] Although this Court has examined the feasibility of partial discharge under § 523(a)(15)(A) in previous cases, the Court finds it unnecessary to address the issue herein in light of the findings and conclusions reached under § 523(a)(15)(B).

[8] Some factors noted by the Court include the following:
1. The amount of debt involved, including all payment terms;
2. The current income of the debtor, objecting creditor, and their respective spouses;
3. The current expenses of the debtor, objecting creditor and their respective spouses;
4. The current assets, including exempt assets of the debtor, objecting creditor and their respective spouses;
5. The current liabilities, excluding those discharged by the debtor's bankruptcy, of the debtor, objecting creditor and their respective spouses;
6. The health, job skills, training, age and education of the debtor, objecting creditor and their respective spouses;
7. The dependents of the debtor, objecting creditor and their respective spouses;
8. Any changes in the financial condition of the debtor, objecting creditor and their respective spouses;
9. The amount of debt which has been or will be discharged in the debtor's bankruptcy;

The parties appear to have similar standards of living, appear well educated, have specialized job skills, are relatively healthy, and are earning relatively equal levels of income commensurate with their employment skills. Plaintiff asserts that Debtor is underemployed because she only works seventy-two hours per pay period and allegedly has the ability and opportunity to increase her income from additional employment in the nursing field. However, the Court notes that Debtor's employer treats her seventy-two hour work period as full-time employment. Furthermore, the variable scheduling that Debtor's employer utilizes and her on-call duty make it difficult for Debtor to find consistent hours to commit to a second job. Accordingly, the Court rejects Plaintiff's assertion that Debtor is underemployed. In light of the fact that the parties earn similar levels of income and enjoy similar lifestyles, the Court finds that the parties' income, expenses, extent of assets, and dependents are particularly relevant factors to consider in this § 523(a)(15)(B) determination.

*A. Income & Expenses*

As stated earlier, Debtor does not generate sufficient disposable income, after paying reasonable living expenses, to make a $342.70 monthly payment due on the Mortgage. Furthermore, Debtor lacks the ability to generate sufficient funds to meet the $57,949.00 balloon payment coming due on March 15, 2007. On the other hand, according to a Financial Declaration that Plaintiff submitted to the State Court, Plaintiff earns $4,886.13 in net monthly income after deductions for taxes, social security, retirement contributions, and

---

10. Whether the objecting creditor is eligible for relief under the Bankruptcy Code; and
11. Whether the parties have acted in good faith in the filing of the bankruptcy and the litigation of the § 523(a)(15) issues.

In re Asbill, 236 B.R. at 197 (quoting In re Armstrong, 205 B.R. 386 (Bankr. W.D. Tenn. 1996)).

Medicare.[9] Plaintiff's total monthly expenses, which presently include the full monthly payment of $685.40 on the Mortgage, are $4,307.26. Therefore, according to the 2005 Financial Declaration entered into evidence, it appears that Plaintiff generates approximately $578.87 in disposable income per month after paying all his living expenses and financial obligations, including the Mortgage. Additionally, Plaintiff's monthly disposable income may be increased in light of the fact that he voluntarily contributes $325.60 monthly payment to his retirement account.[10] Including the $325.60 voluntary deduction for retirement to Plaintiff's monthly income increases his disposable income to approximately $900.00.

Despite his verified pleading in State Court, Plaintiff now contends the $741.82 in bonus pay listed on the 2005 Financial Declaration overstates his monthly income. Plaintiff testified that his bonus pay is dependent upon the overall performance of his employer, Capital Bank, for a given fiscal year and that he received the largest bonus of his career in 2004 because Capital Bank enjoyed its most lucrative year. Plaintiff also stated that he did not receive bonus pay every year and that during his tenure at Capital Bank, he did not receive a bonus for 8 or 9 years. However, Plaintiff noted without specifics, that he did receive some measure of incentive pay for those years he was without a bonus. Plaintiff also testified that he received a three percent (3%) increase in salary last year and that he normally receives that increase every year. Despite Plaintiff's assertions, the fact that he has the ability to earn bonus and incentive pay indicates that he is in a better position to increase

---

[9] The Court notes that Plaintiff only submitted a 2003 Federal Income Tax Return to Debtor during discovery and that Plaintiff failed to provide Debtor with a copy of his 2004 Federal Income Tax Return despite having an ongoing duty to do so. The Court also notes that Plaintiff failed to submit credit card statements in his possession that Debtor requested during discovery. Furthermore, Plaintiff admitted that he failed to list all the assets he owned during the divorce proceedings conducted in State Court.

[10] Were it necessary to examine Plaintiff's expenses in even greater depth, the Court notes Plaintiff's budget includes high expenses for telephone and laundry.

13

his income through his regular employment than Debtor. Therefore, the Court concludes that including the bonus pay listed on the 2005 Financial Declaration provides an accurate measure of Plaintiff's monthly income.[11]

In light of such evidence, it appears that Plaintiff is able to make full monthly payments on the Mortgage and generate approximately $900.00 in disposable income per month. Therefore, on balance, Plaintiff appears better able to withstand the additional burden of being required to pay the full obligations of the Mortgage. Additionally, the $900.00 in disposable income provides a sufficient cushion for Plaintiff's forecasted increase in payments caused by refinancing the Mortgage's balloon payment at a higher interest rate.

*B.     Assets*

Furthermore, the Court also notes that despite being already burdened with full payment of the Mortgage, Plaintiff holds significantly more financial assets than Debtor. Plaintiff's Financial Declaration indicates that he holds a retirement account valued at $124,559.36,[12] stocks valued at $19,100.00, and other assets valued at $25,000.00. On the other hand, the evidence indicates that Debtor's only significant assets are the $12,000.00 in equity in her home, her $2,000 tax refund, and a retirement account valued at approximately $4,200.00. Therefore, a comparison of exempt and nonexempt assets available to Plaintiff

---

[11] The Court also notes that under South Carolina law, financial declarations, such as the one entered into evidence, are sworn documents. See Penny v. Green, 357 S.C. 583, 589, 594 S.E.2d 171, 174 (S.C. 2004) ("Financial declarations are sworn documents . . . ."). Therefore, in reliance upon Plaintiff's signature at the end of the financial declaration submitted into evidence, the Court concludes that the Financial Declaration provides the most accurate picture of Plaintiff's monthly income and expenses.

[12] The Court notes that it appears that Plaintiff has obtained a loan from his 401(k) for approximately $22,000.00.

and Debtor reveals that Plaintiff has more resources to pay obligations on the Mortgage without suffering a substantial decline in his standard of living.[13]

### C. Issues Regarding Minor Child/Dependent

Finally, it appears that Plaintiff has recently commenced an action against Debtor in State Court over custody of their minor child and for child support. Plaintiff has in fact been the primary caretaker of the parties' minor child since January 2004. However, under the terms of the parties' settlement agreement, Debtor is listed as the primary custodian of the parties' minor child. Under these circumstances, Debtor is able to claim a deduction for the minor child as a dependent for tax purposes. Plaintiff contends that he seeks primary custody of the parties' minor child so that he may claim her as a dependent on his taxes, claim certain tax deductions, and keep the child enrolled in the school district where Plaintiff resides. Plaintiff also asserted that he only seeks custody of the minor child and does not presently wish to pursue a child support award from Debtor.

Plaintiff also contends that he undertook the obligation to pay all of the minor child's college expenses with the understanding that Debtor would continue to pay her half of the Mortgage. However, the terms of the Divorce Decree provide that Debtor waived any interest in Plaintiff's retirement account "under the condition that the Plaintiff agrees to be solely responsible for the minor child's college expenses." Thereafter, the Divorce Decree also provides that if the parties' minor child does not attend or substantially complete a college education within three years following her high school graduation, Plaintiff agreed to be solely responsible for all remaining payments on the Mortgage.

---

[13] At this time, the Court finds it unnecessary to discuss Debtor's argument that the Mortgage is also primarily secured by the home of Plaintiff's parents and their $30,000 certificate of deposit on which Plaintiff is the likely beneficiary.

Although discharging Debtor from her half of the payments on the Mortgage may burden Plaintiff financially, especially if he remains primarily responsible for the care and expenses of the minor child, Plaintiff has the ability to seek a modification of the terms of the Divorce Decree in State Court with respect to support and/or possible tuition expenses of the minor child. See Penny v. Green, 357 S.C. 583, 589, 594 S.E.2d 171, 174 (S.C. 2004) ("Family courts are empowered to modify child support upon a proper showing of a change in either the child's needs or the supporting parent's financial ability. To warrant a modification in child support, the change of circumstances must be either substantial or material.") (internal quotations and citations omitted). The State Court is far better equipped to determine the needs of the child and the appropriate level of financial support that Debtor should pay. Furthermore, a resort to the State Court appears likely in light of the change in the residence of the minor child and the contingent nature of Plaintiff's obligation to pay the minor child's future college expenses.

D.   *523(a)(15)(B) Balancing Test Analysis*

When balancing the benefit of discharge to a debtor against the resulting detriment to a creditor, the plain language of § 523(a)(15)(B) requires that the benefit of discharge to the debtor be greater than the detriment suffered by the creditor in order for a debtor to discharge a marital obligation covered by § 523(a)(15). 11 U.S.C. § 523(a)(15)(B). See also In re Ballard, No. 02-1819, 2003 WL 21470313, at *5 (4th Cir. 2003) (quoting § 523(a)(15)(B) and noting that its plain language provides for discharge when the "benefit to the debtor . . . outweighs the detrimental consequences to [the] spouse"). The statutory language of § 523(a)(15)(B) appears to indicate that if the benefit of a discharge to a debtor outweighs the detriment suffered by a creditor even to a small degree, the debtor prevails; if

16

the converse is true, then the creditor prevails. See id. (concluding that there is no separate requirement that the detrimental consequences to a creditor spouse be substantial under § 523(a)(15)(B)). Accordingly, applying the plain meaning of § 523(a)(15)(B) and in light of the totality of the circumstances and the foregoing factors, it appears that the benefit of discharging Debtor's obligations on the Mortgage outweighs the resulting detriment suffered by Plaintiff.

### III.    Conclusion

Therefore, in light of the foregoing, the Court concludes that (1) Debtor does not have the ability to pay her obligation for the Mortgage from income or property not reasonably necessary to be expended for her maintenance or support and (2) Debtor's benefit of discharging such obligation outweighs the resulting detriment suffered by Plaintiff. Thus, Debtor's obligation to pay half of the Mortgage payments under the terms of the parties' Divorce Decree is discharged under 11 U.S.C. §§ 523(a)(15)(A) & (B).[14]

**AND IT IS SO ORDERED.**

_____
UNITED STATES BANKRUPTCY JUDGE

Columbia, South Carolina,
May 24, 2005.

---

[14] Inasmuch as the Court's perception of Debtor's financial circumstances and standard of living is largely dependent on her representation that she must reside at the Loblolly Home, if Debtor does not return to reside at the Loblolly Home by the end of July 2005, or upon presentation of credible evidence demonstrating that her living expenses there are being shared or otherwise reduced to a significant degree, the Court may reconsider this matter upon Plaintiff's filing of a motion that meets the requirements of Fed. R. Civ. P. 60.